# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
SAVANNAH SMITHSON,              *
                               *     No. 13-735V
            Petitioner,        *     Special Master Christian J. Moran
                               *
v.                             *
                               *     Filed: August 15, 2019
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *     Attorneys' fees and costs
                               *
            Respondent.        *
* * * * * * * * * * * * * * * * * * * *
```

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner;
Lara A. Englund, United States Dep't of Justice, Washington, DC, for respondent.

### UNPUBLISHED DECISION AWARDING
### ATTORNEYS' FEES AND COSTS[1]

Ms. Smithson ("petitioner") filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–10 through 34 (2012). After litigating her petition for nearly six years, on April 2, 2019, she moved for her claim to be dismissed based on her determination that she would not be able to meet her burden of proof under the Act. The undersigned concurred with petitioner's assessment and dismissed her petition seven days later. See Decision, issued Apr. 9, 2019. On May 14, 2019, petitioner moved for a final award of attorneys' fees and costs, requesting $25,471.00 in fees and $9,084.82 in costs, for a total of $34,555.82. Pet'r's Fees Mot. at 1. **For the reasons that follow, petitioner is awarded $30,505.82.**

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. This posting will make the decision available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

I.      **Procedural and Factual History**

The April 9, 2019 decision dismissing the petition sets out the basic background.  See Smithson v. Sec'y of Health and Human Servs., No. 13–735V, 2019 WL 1992636 (Fed. Cl. Spec. Mstr. Apr. 9, 2019).  Petitioner's pending motion for an award of final fees and costs begins in September 2015, because petitioner sought and received an award of attorneys' fees and costs for work performed before that time.  See Interim Fees and Costs Decision, issued Jan. 27, 2016; Pet'r's Mot. for Interim Fees and Costs, filed Aug. 24, 2015.

By September 2015, petitioner had replaced two original experts with a report from Patrick Nemechek, an internal medicine specialist.  Exhibit 39.  The undersigned raised several concerns about deficiencies in Dr. Nemechek's report and granted petitioner leave to have Dr. Nemechek prepare a supplemental report to address these concerns.  See order, issued Sept. 16, 2015.  Dr. Nemechek was especially encouraged to address petitioner's pre-vaccination condition, the lack of tilt-table testing with regard to her diagnosis, and the appropriate timing between the vaccine and the onset of dysautonomia under petitioner's proposed theory of causation.  Id.

On December 2, 2015, petitioner filed the supplemental report from Dr. Nemechek.  Exhibit 110.  During a status conference on January 19, 2016, the undersigned communicated various concerns about the contents of Dr. Nemechek's reports and his failure to address various elements of petitioner's claim for compensation.  See order, issued Jan. 27, 2016.

Following the submission of respondent's expert reports in August 2016, efforts were undertaken by petitioner and her expert, Dr. Nemechek, to perform diagnostic testing on petitioner that would be able to show that she suffered from dysautonomia.  See order, issued Sept. 15, 2016.  Petitioner filed the results of this testing on January 10, 2017.  Exhibit 125.  This testing, which was performed by Dr. Nemechek, alleged showing that petitioner suffered from "substantial parasympathetic damage" and "inadequate sympathetic function."  Id.  While the results of the autonomic testing were potentially relevant and helpful, it was noted during the February 7, 2017 status conference that Dr. Nemechek's report had failed to address the concerns raised by respondent's expert Dr. Mack in his most recent report.  Order, issued Feb. 7, 2017.  Petitioner was offered an opportunity to supplement Dr. Nemechek's expert report.  Id.  In a status report filed on April 3,

2017, petitioner stated that she had "conferred with Dr. Nemechek and determined that no additional report from Dr. Nemechek is needed or will be forthcoming." Petitioner further noted that the concerns raised by respondent's expert would "be addressed in pre-hearing briefing." Petitioner's petition was set for a three-day hearing to be held from May 21, 2018, to May 23, 2018, in Washington, DC. Order, issued May 16, 2017.

Three months before the hearing was scheduled to occur, petitioner requested a status conference. See order, issued Feb. 23, 2018. During the status conference, held on February 22, 2018, petitioner stated that she was no longer confident in her expert's ability to opine in support of her claim for compensation. Id. As a result, petitioner requested that the hearing be cancelled so that she could obtain an expert report from a new expert. Id. Petitioner's request was granted, and petitioner was given until April 27, 2018, to file a report from a new expert witness. Id.

Petitioner filed an expert report from her fourth, and final, expert, Mitchell Miglis, a neurologist, on April 3, 2018. Exhibit 127. A status conference was held on May 8, 2018, to discuss Dr. Miglis's report. During the status conference, petitioner was ordered to have Dr. Miglis supplement his initial report with additional information on the diagnostic testing used to diagnose petitioner with dysautonomia and to state the basis for his association of the HPV vaccine and dysautonomia. Order, issued May 9, 2018. Petitioner filed a supplemental report from Dr. Miglis on May 25, 2018. Exhibit 141. During a status conference on October 16, 2018, the undersigned emphasized that although Dr. Miglis had provided some evidence to conclude that POTS has an autoimmune etiology, there did not appear to be support for his conclusion that the HPV vaccine could cause the autoimmune process that would give rise to POTS. Order, issued Oct. 17, 2018.

During a November 29, 2018 status conference to discuss next steps, the undersigned communicated his concerns about petitioner's case. Most importantly, the undersigned noted that "[w]ithout evidence associating the HPV vaccination to POTS, [petitioner] cannot be awarded compensation." Order, issued Nov. 29, 2018, at 1 (citing Hibbard v. Sec'y of Health & Human Servs., 698 F.3d 1355, 1365 (Fed. Cir. 2012)). The undersigned identified a recent decision by Special Master Corcoran that evaluated a claim very similar to petitioner's and

3

indicated that the analysis by Special Master Corcoran appeared to be sound.  Id. (citing Johnson v. Sec'y of Health & Human Servs., No. 14-254V, 2018 WL 2051760, at *37-41 (Fed. Cl. Spec. Mstr. Mar. 23, 2018)).  Petitioner requested, and was granted, time to consult with her attorney and consider her next steps.  Id. at 2.

On April 2, 2019, petitioner moved to dismiss her petition, stating that "she will likely be unable to meet her burden of proof and establish that she is entitled to compensation in the Vaccine Program."  Pet'r's Mot. at 2.  In a decision issued on April 9, 2019, the undersigned found that after being provided a full and fair opportunity to present her case, petitioner had not submitted evidence sufficient to meet her statutory burden for compensation.  Decision, issued Apr. 9, 2019, at 2. Accordingly, her petition was dismissed.  Id.

On May 14, 2019, petitioner moved for reimbursement of $25,471.00 in attorneys' fees and $9,084.82 in attorneys' costs.  The Secretary responded two days later with his pro forma response, stating that he deferred to the undersigned to determine a reasonable award for attorneys' fees and costs.  Resp't's Resp., filed May 16, 2019, at 2-3.  Petitioner did not file a reply, leaving the matter ripe for adjudication.

## II.    Analysis

Even in cases where compensation is denied, petitioners who bring their petitions in good faith and who have a reasonable basis for their petitions may be awarded attorneys' fees and costs.  42 U.S.C. § 300aa–15(e)(1).  Here, the undersigned finds that petitioner acted in good faith and that the evidence submitted in this case is sufficient to conclude that she had a reasonable basis to bring the petition.  Thus, petitioner is eligible for an award of attorneys' fees and costs.  The only question at bar is whether the requested amount is reasonable.  In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

4

A.     Attorneys' Fees

The Vaccine Act permits an award of reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(e).  The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  This is a two-step process.  Id.  First, the court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.  This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute.  Hensley v. Eckerhart, 461 U.S. 424, 429-37 (1983).

It is "well within the special master's discretion" to determine the reasonableness of fees.  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); see also Hines v. Sec'y of Health & Human Servs., 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs").  Motions for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work.  See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008).  Such motions, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'"  Saxton, 3 F.3d at 1521 (quoting Hensley, 461 U.S. at 434).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community.  See Blum, 465 U.S. at 895.  The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Id. at 895, n.11.  Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable.  Id.

1.      Reasonable Hourly Rates

Petitioner requests attorneys' fees for work performed by counsel, Andrew Downing, an associate, Courtney Van Cott, and two paralegals.  Pet'r's Fees Mot., exhibit A at 24.  Petitioner requests that Mr. Downing be paid $350 per hour for work he performed in 2015 and 2016, $375 per hour for 2017, and $385 per hour for 2018 and 2019.  Petitioner requests that Ms. Van Cott be paid $195 per hour for work she performed in 2017, and $205 per hour for 2018 and 2019.  Petitioner requests that the two paralegals be reimbursed $100 per hour for work they performed in 2015 and 2016, and $135 per hour for 2017, 2018, and 2019.

The attorneys practicing at Van Cott & Talamante, located in Arizona, have repeatedly been found to be "in-forum" and therefore justified to the forum rates established in McCulloch v. Sec'y of Health & Human Servs., No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[2]  Mr. Downing and his associates' rates were recently analyzed by the undersigned in Abbott v. Sec'y of Health & Human Servs., No. 14-907V, 2019 WL 1856435, at *3 (Fed. Cl. Spec. Mstr. Mar. 19, 2019).  The rates awarded in Abbott are marginally less than the rates requested here.  Although Abbott was issued two months prior to the submission of the present motion, petitioner is requesting a higher hourly rate without explaining the basis for the increase.  Accordingly, the undersigned will adopt the rates set in Abbot for 2015 through 2018.  Abbott, however, did not set rates for 2019.  For 2019, the undersigned finds the requested rates to be reasonable.  This results in a reduction of $1,700.00.

2.      Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation."  Avera, 515 F.3d at 1348.  Reasonable hours are not excessive, redundant, or otherwise unnecessary.  Saxton, 3 F.3d at 1521.  The Secretary did not challenge any of the requested hours as unreasonable.  In view of the

---

[2] The McCulloch forum rate ranges have been compiled into a list and posted to the Vaccine Claims section of the United States Court of Federal Claim website.  The forum hourly rate fee schedule can be accessed at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Attorneys' Forum Hourly Rate Fee Schedules").

Secretary's lack of objection, the undersigned has reviewed the number of hours for reasonableness.  See McIntosh, 139 Fed. Cl. 238.

Overall, the timesheets from Mr. Downing and his associates are sufficiently detailed that the activities can be assessed for reasonableness.  Although most of the timesheet entries are reasonable, counsel's paralegals billed time for filing documents in CM/ECF.  See Pet'r's Fees Mot., Exhibit A at 7-20.  Filing documents is a clerical task for which attorneys and paralegals should not charge. See Guerrero v. Sec'y of Health & Human Servs., No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015), mot. for rev. denied in relevant part, 124 Fed. Cl. 153, app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016).  The paralegals also billed time for perfunctory review of every document or simple docket entry, notably minute entries and non-pdf scheduling orders, filed in CM/ECF.  This billing for clerical tasks merits a reduction of $2,000.00.

Additionally, a substantial portion of the hours requested by petitioner involved work performed by Mr. Downing and his associates in relation to Dr. Patrick Nemechek's reports and anticipated testimony.  Pet'r's Fees Mot., exhibit A at 1-20.  This work was for naught, however, because petitioner ultimately withdrew Dr. Nemechek from the case, citing concerns about his performance as an expert witness.  This raises the question of whether it is now reasonable to compensate petitioner for all the work done in relation to Dr. Nemechek's participation.

In her fees' motion, petitioner argues that she should not be penalized for initially retaining Dr. Nemechek at a time when she was unaware of any issues regarding said expert.  Pet'r's Fees Mot. at 3.  She further argues that she immediately retained a different expert, Dr. Mitchell Miglis, when her counsel, Mr. Downing, "learned of some issues pertaining to Dr. Nemechek through a case that went to hearing with Special Master Corcoran."  Id.

This issue is relatively close.  The undersigned accepts that Mr. Downing did not know about issues with Dr. Nemechek when Mr. Downing retained him. On the other hand, should Mr. Downing have discovered the problems that the Secretary's attorney brought out in the case before Special Master Corcoran?  A more diligent investigation by Mr. Downing could have saved much time and effort.  Ultimately, however, the undersigned reimburses Mr. Downing for work

associated with Dr. Nemechek because (1) Mr. Downing quickly replaced Dr. Nemechek and has not continued to present expert reports from Dr. Nemechek, and (2) the Secretary has not interposed any objection to paying Dr. Nemechek.

B.    Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  Attorneys' costs include expert time incurred while working on a case.  Fester v. Sec'y of Health & Human Servs., No. 10–243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013).  Reasonable expert fees are determined using the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours.  See Chevalier v. Sec'y of Health & Human Servs., No. 15-001V, 2017 WL 490426, at *3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017).  Reasonable costs also include the costs of obtaining medical records and expenses incurred while traveling in relation to the claim.  Reginelli v. Sec'y of Health & Human Servs., No. 14–972V, 2016 WL 1161309, at *3 (Fed. Cl. Spec. Mstr. Mar. 1, 2016).

Petitioner requests $9,084.82 in costs incurred by her attorney.  Part of the costs is for petitioner's travel to Arizona to be examined by Dr. Nemechek ($1,611.42) and for photocopies of medical records ($23.40).  Pet'r's Fees Mot., exhibit A at 28, 30, 35.  The majority of the costs ($7,450.00) is for the expert fees from Dr. Nemechek ($2,450.00) and Dr. Miglis ($5,000.00).

In the pending motion for final fees and costs, Dr. Nemechek presented an invoice for $2,450, charging an hourly rate of $350.00 for seven hours of work for two expert reports and one office visit.  Id. at 25, 31.  This amount is reasonable given the circumstances in this case.[3]

Petitioner will not, however, be awarded Dr. Nemechek's costs for the ANSAR testing he conducted at his office.  As explained in Kozel —a case involving Dr. Nemechek—the cost for petitioner's ANSAR testing conducted by

---

[3] As mentioned earlier, Mr. Downing has stopped presenting reports from Dr. Nemechek. This decision's payment for Dr. Nemechek's work should not be construed as an approval of Dr. Nemechek's work in future case.

Dr. Nemechek should be submitted to insurance for reimbursement.  Kozel v. Sec'y of Health & Human Servs., No. 14-797V, 2018 WL 2031034, at *4 (Fed. Cl. Spec. Mstr. Apr. 2, 2018) (citing Fuesel v. Sec'y of Health & Human Servs., No. 02–95V, 2014 WL 1379241, at *5 (Fed. Cl. Spec. Mstr. Mar. 19, 2014) (noting that absent evidence that insurance would not cover the cost of medical testing, the special master could not determine whether such cost was reimbursable as an item of attorneys' fees and costs)).  Thus, if Dr. Nemechek did not submit petitioner's ANSAR tests for reimbursement to an insurance company because the insurance company would not reimburse this expense, then there may be a concern about the legitimacy of the testing.  Consequently, the $350.00 fee that Dr. Nemechek has charged for the testing is removed.  However, because insurance companies do not routinely reimburse for travel expenses, the costs associated with petitioner's travel to see Dr. Nemechek are allowed.

Dr. Miglis requested a total charge of $5,000, representing ten hours of work for two expert reports at an hourly rate of $500.00 per hour.[4]  Pet'r's Fees Mot., exhibit A at 32-34.  The overall amount requested is reasonable.  The undersigned does not necessarily endorse the hourly rate of $500 per hour, which is at the top of the current general range for expert hourly rates.  In addition, Dr. Miglis is instructed to present more detail in his invoices.  See Otto v. Sec'y of Health & Human Servs., No. 16-1144V, 2018 WL 5782873, at *3-4 (Fed. Cl. Spec. Mstr. Oct. 5, 2018) (noting that Dr. Miglis did not provide a breakdown of his work and refraining to reimburse petitioner for Dr. Miglis's work on an interim basis).  Nevertheless, petitioner will be awarded Dr. Miglis's costs.

*     *     *

Accordingly, the following amounts are reasonable:

| | |
|---|---|
| Attorneys' Fees Requested | $25,471.00 |
| Reduction to Hourly Rates | $1,700.00 |
| Reduction to Total Hours | $2,000.00 |
| TOTAL Attorneys' Fees Awarded | $21,771.00 |

---

[4] In future requests, Dr. Miglis should show how he billed against a retainer; otherwise, he will be asked to re-file his request before being awarded any of his costs.

9

| Attorneys' Costs Requested | $9,084.82 |
|---|---|
| Reduction for ANSAR Testing | $350.00 |
| TOTAL Attorney's Costs Awarded | $8,734.82 |

The total amount awarded in attorneys' fees and costs is $30,505.82.  This amount shall be paid as follows:

**A lump sum of $30,505.82 in the form of a check made payable to petitioner and petitioner's attorney, Andrew Downing.**

This amount represents reimbursement of attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).  In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master